UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NATIONAL NURSES ORGANIZING
COMMITTEE - FLORIDA/NATIONAL
NURSES UNITED, AFL-CIO,

       Plaintiff,

v.                           Case No. 8:20-cv-2917-VMC-CPT

GALENCARE, INC. d/b/a ST.
PETERSBURG GENERAL HOSPITAL,

       Defendant.
_____/

**ORDER**

This matter comes before the Court upon consideration of Plaintiff National Nurses Organizing Committee – Florida/National Nurses United, AFL-CIO's ("the Union's") Motion for Summary Judgment to Compel Arbitration (Doc. # 34), filed on April 23, 2021. Defendant Galencare, Inc. d/b/a St. Petersburg General Hospital responded on May 14, 2021 (Doc. # 36), and the Union replied on May 24, 2021. (Doc. # 37). For the reasons set forth below, the Motion is granted in substantive part.

I.   **Background**

The Union "represents a bargaining unit of registered nurses" ("RNs") employed at St. Petersburg General, an "acute-care hospital" in Pinellas County, Florida. (Doc. # 1

at ¶¶ 2, 6; Doc. # 14 at ¶ 2; Doc. # 34-1 at ¶¶ 4-5). The Union and St. Petersburg General are parties to a collective bargaining agreement ("CBA") effective from October 16, 2018, through May 31, 2021. (Doc. # 1-1 at 1). The CBA provides procedures for the resolution of grievances between the Union and St. Petersburg General. (<u>Id.</u> at 34-37). The CBA defines a "grievance" as "any complaint against [St. Petersburg General] submitted by the Union in writing for an alleged breach of a specific provision of [the CBA], except as to those provisions which are not subject to [Article 18]." (<u>Id.</u> at 35). A "class grievance" is defined as "any complaint against [St. Petersburg General] submitted in writing by the Union on behalf of two [] or more [RNs] and regarding the same alleged breach of [the CBA] or multiple alleged breaches of the same provision(s) of [the CBA]." (<u>Id</u>).

A. <u>**The CBA's Grievance and Arbitration Procedures**</u>

Article 18 of the CBA outlines the process for resolving such grievances. (<u>Id.</u> at 10, 34-37). The CBA's formal grievance procedure begins with the Union "submitting a written grievance to Human Resources within" a set deadline. (<u>Id.</u> at 36). This written grievance shall:

> (1) be dated; (2) be signed by the grievant or a Union representative responsible for advancing the grievance; (3) set forth the name(s) of the

2

> Registered Nurse(s) or class of Registered Nurses
> on whose behalf the grievance is being brought; (4)
> include a description of the acts giving rise to
> the grievance; (5) set forth the date(s) on which
> the act(s) giving rise to the grievance occurred;
> (6) identify the Article(s) and Section(s) of the
> [CBA] allegedly violated; and (7) state the remedy
> requested.

(Id.). Thereafter, the Union and St. Petersburg General must participate in three "steps" of meetings and written communications with various levels of personnel and within certain deadlines – unless the grievance is satisfactorily resolved prior to moving to the next step of the process. (Id. at 36-37). If the procedures described in Article 18 fail to resolve the grievance, "the Union may advance the grievance to arbitration." (Id. at 10).

The parties' arbitration agreement and procedures are outlined in Article 2 of the CBA. (Id. at 10-12). Article 2 describes the scope of the arbitrator's authority as follows:

> 1. The arbitrator shall limit his/her opinion to
> the interpretation and/or application of the [CBA]
> and shall have no power to add to, subtract from,
> modify, change[,] amend or delete any of the terms
> or provisions of the [CBA]. Further, the arbitrator
> may not hear any matter after this [CBA] has expired
> other than matters which arose prior to the
> expiration of the [CBA]. No arbitrator shall
> attempt to mediate a dispute before, during or
> after hearing the arbitration on the same matter
> without first obtaining express written permission
> from both parties.
>
> 2. If there is an issue as to whether a grievance

3

> is barred for failure of one [] or both of the
> parties to comply with the procedural requirements
> of this Article (procedural arbitrability), the
> same arbitrator will be permitted to rule on both
> the question of procedural arbitrability and the
> merits; provided that the arbitrator shall first
> issue a decision resolving the procedural
> arbitrability issue before hearing the merits.

(Id. at 11).

### B. **The Union's Grievances**

From May 7 to May 11, 2020, the Union e-mailed Dana

Austin – a labor specialist at HCA, St. Petersburg General's

parent company – three documents it contends constitute

written grievances under the CBA. (Doc. # 34-1 at ¶¶ 10-12,

26, 42). The first document alleges that St. Petersburg

General violated three sections of the CBA as follows:

> Article 17, Section 2 – [St. Petersburg General]
> called-off and/or removed [pro re nata ("PRNs")]
> from the schedule rather than assign them to float
> in the order listed. Article 6, [Section] 3 – PRNs
> called off despite remaining RNs not being fully
> competent to care for [St. Petersburg General's]
> actual and anticipated patients. Article 10,
> Section 1 – [St. Petersburg General] effectively
> disciplined and/or discharged PRNs without notice
> by removing them from schedules and/or calling off
> even though PRNs should have been employed, by
> definition, to provide relief to staff and to
> assist during anticipated peak workload periods,
> including but not limited to COVID-19 and Emergency
> Room surges.

(Doc. # 34-21 at 2). The document provides that it was

submitted on behalf of a group of PRNs and notes they request

4

that St. Petersburg General "[s]chedule, float, and employ
PRNs appropriately" and provide "back pay for days improperly
removed from [the] schedule." (Id.). The document does not
include the name of all nurses included within the class, but
does name nurse representative Barbara Murray. (Id.). The
document lists the date of the violations as
"[a]pprox[imately] Apr[il] 23. (Id.).

The second purported grievance was e-mailed to Austin on
May 8, 2020. (Doc. # 34-1 at ¶ 26; Doc. # 34-11 at 1-2). The
document alleges that St. Petersburg General violated various
sections of Article 17 of the CBA as follows:

> [Section] 1 – [St. Petersburg General] is not
> implementing unit orientations or competency
> checklists to determine the qualifications of RNs
> to perform the duties of float assignments,
> including but not limited to determinations that
> RNs have a current, demonstrated, validated
> competency to perform such duties; and [St.
> Petersburg General] is not making reasonable
> efforts to determine float assignments prior to the
> start of RNs' shifts. [Section] 2 – [St. Petersburg
> General] has not followed the assignment order when
> it has assigned PT and FT [RNs] to float without
> first assigning volunteers, agency staff, and PRNs.
> [Section] 4 – [St. Petersburg General] is requiring
> RNs to float outside their "like units" or face
> termination.

(Doc. # 34-11 at 2). The document provides that it was
submitted on behalf of a group of "L&D, Post Partum, Nursery,
GYN & any & all other RNs similarly impacted" and notes the

5

group requests that St. Petersburg General "[f]ollow [the] order of [Section] 2, and only if necessary because volunteer, agency, and PRNs are unavailable, float PT and FT RNs to like units, or unlike units where introductions, orientations and competency checklists have been completed." (Id.). The document does not list the names of the RNs included within the class, but does name Murray. (Id.). "[Approximately] May 4, 2020" is noted as the date of these violations. (Id.).

The Union e-mailed Austin the third purported grievance on May 11, 2020. (Doc. # 34-1 at ¶ 12). The document alleges:

> Within the grievance period, [St. Petersburg General] has violated the following: [Article] 31, [Section] 1, by requiring RNs to be on-call without paying $3.50 per hour for time spent on-call; Article 31, [Section] 2 by failing to pay RNs 1.5 times the hourly rate, and a minimum of two hours, for call-back pay; [Article] 7, [Section] C by failing to pay established minimums in the CBA, and failing to notify and meet with the Union over compensation changes; [Article] 18, [Section] 1, by failing to engage in good faith efforts to resolve these disputes.

(Id.; Doc. # 34-4 at 1-2). The document provides that it was submitted on behalf of a group of "RNs Impacted by [St. Petersburg General's] Violations of On-Call, Call-Off, Minimums, and Good Faith" and notes that the group seeks "[b]ack-pay for time on-call and call-back," and that St. Petersburg General "pay all minimums established in the CBA,"

6

"properly notify the Union of any prospective changes[,] and engage in good faith efforts to resolve prospective disputes." (Doc. # 34-4 at 2). The document does not include the name of all RNs included within the class, but does name Murray. (Id.). Regarding the dates of the violations, the document states only: "Multiple [within] 21 days." (Id)

St. Petersburg General responded in substantively the same way to all three grievances. (Doc. # 34-1 at ¶¶ 12-55). As an example, the Court will describe St. Petersburg's response to the final grievance. Austin did not initially respond to the Union's May 11, 2020, e-mail regarding the third grievance. (Id. at ¶ 14). Later that month, the Union spoke with Austin by telephone, and she "indicated that she would not process the grievance or meet with the Union." (Id. at ¶ 15). The Union attempted to proceed with the second step of the CBA's grievance process but because of Austin's refusal to do so, the Union advanced to the third step by contacting St. Petersburg General's chief executive officer. (Id. at ¶¶ 16-17; Doc. # 34-5). On May 28, 2020, Austin responded to that e-mail, explaining that the purported grievance "fails to meet the definition of a grievance per the [CBA]" as "[i]t does not contain any particular incident, date, or nurse/nurses as it relates to the potential claim." (Doc. #

7

34-6 at 1). Because of this, Austin concluded that the
"grievance is not grievable/ arbitrable." (Id.).

On June 10, 2020, the Union notified Austin that it would
be "advancing the [grievance] to arbitration." (Doc. # 34-7
at 1; Doc. # 34-1 at ¶ 19). On June 29, 2020, Brett Ruzzo –
counsel at HCA – sent the Union a letter explaining that the
grievance "did not meet the definition of a grievance pursuant
to the CBA" for the reasons previously outlined by Austin.
(Doc. # 34-10 at 2). Again, Ruzzo noted that St. Petersburg
General would not be proceeding with arbitration. (Id.).

This same staunch position that the documents did not
constitute grievances under the CBA, and the same refusal to
proceed with the grievance resolution steps outlined in the
CBA or arbitrate, occurred in response to all three of the
Union's grievances. (Doc. ## 34-11; 34-12; 34-13; 34-14; 34-
15; 34-16; 34-17; 34-20; 34-22; 34-23; 34-24; 34-28).

The Union initiated this action on December 8, 2020.
(Doc. # 1). The Union seeks: (1) an order compelling St.
Petersburg General to submit the three grievances to
arbitration pursuant to the terms of the CBA, (2) an order
directing St. Petersburg Hospital to select an arbitrator
with the Union by a date certain, and (3) attorney's fees and
costs. (Id. at 7). St. Petersburg Hospital answered on January

8

19, 2021. (Doc. # 14). Now, the Union moves for summary judgment on the relief sought in the complaint. (Doc. # 34). The Union also requests oral argument. (Doc. # 32-29). St. Petersburg Hospital responded (Doc. # 36) and the Union replied. (Doc. # 37). The Motion is ripe for review.

## II.  <u>Legal Standard</u>

"A motion to compel arbitration is treated as a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction." <u>Babcock v. Neutron Holdings, Inc.</u>, 454 F. Supp. 3d 1222, 1228 (S.D. Fla. 2020) (citations omitted). Accordingly, "the Court may consider matters outside the four corners of the Complaint." <u>Id.</u> When determining the existence of an arbitration agreement, federal courts employ a "summary judgment-like standard," "conclud[ing] as a matter of law that parties did or did not enter into an arbitration agreement only if 'there is no genuine dispute as to any material fact' concerning the formation of such an agreement.'" <u>Bazemore v. Jefferson Cap. Sys., LLC</u>, 827 F.3d 1325, 1333 (11th Cir. 2016) (quoting Fed. R. Civ. P. 56(a)). "A dispute is not 'genuine' if it is unsupported by the evidence or is created by evidence that is 'merely colorable' or 'not significantly probative.'" <u>Id.</u> (quoting <u>Baloco v. Drummond Co.</u>, 767 F.3d 1229, 1246 (11th Cir. 2014)).

9

III. **Analysis**

In its Motion, the Union argues "[t]here is no dispute that the [] CBA contains a valid agreement to arbitrate" or "that the agreement to arbitrate covers the provisions that the Union alleged [St. Petersburg General] violated in its . . . [g]rievances." (Doc. # 34 at 3). The Union also contends that this "quintessential procedural-arbitrability" issue is for the arbitrator – not the Court – to decide. (Id.). St. Petersburg General responds that the "purported grievances fail to satisfy the definition of 'grievance' under the [CBA]," such that the parties did not agree to arbitrate the issues raised therein. (Doc. # 36 at 3-11).

Under the Federal Arbitration Act ("FAA"), a written arbitration provision in a "contract evidencing a transaction involving commerce . . . [is] valid, irrevocable, and enforceable," unless law or equity necessitates revocation of the contract. 9 U.S.C. § 2 (2020). Federal law favors arbitration agreements. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983). Thus, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Id. However, "a party cannot be required to submit to arbitration any dispute which he [or she] has not agreed so to submit." United Steelworkers of Am.

10

<u>v. Warrior & Gulf Navigation Co.</u>, 363 U.S. 574, 582 (1960).

"Before deciding whether a case should be referred to arbitration, 'a court must determine: (1) whether there is a valid agreement to arbitrate; (2) whether a court or an arbitrator should decide if the dispute falls within the scope of the agreement to arbitrate; and (3) whether the dispute does fall within the scope – the question of arbitrability.'" <u>Van Williams v. Voya Fin. Advisors, Inc.</u>, No. 8:20-cv-2611-VMC-JSS, 2021 WL 50491, at *2 (M.D. Fla. Jan. 6, 2021) (quoting <u>Convergen Energy LLC v. Brooks</u>, No. 20-cv-3746 (LJL), 2020 WL 5549039, at *13 (S.D.N.Y. Sept. 16, 2020)).

Here, St. Petersburg General does not argue that the CBA's arbitration provisions are invalid or unenforceable. (Doc. # 36 at 9). And, neither party appears to argue that the initial question of arbitrability should be submitted to the arbitrator. (Doc. ## 34; 36; 37). Accordingly, the Court turns to the scope of the arbitration agreement.

The Court finds that the parties have agreed to arbitrate whether a grievance has complied with the procedural requirements of the CBA such that the parties may proceed to arbitration over the grievance. Indeed, in Article 2 of the CBA, the authority of the arbitrator expressly includes "procedural arbitrability":

11

> If there is an issue as to whether a grievance is barred for failure of one (1) or both of the parties to comply with the procedural requirements of this Article (procedural arbitrability), the same arbitrator will be permitted to rule on both the question of procedural arbitrability and the merits; provided that the arbitrator shall first issue a decision resolving the procedural arbitrability issue before hearing the merits.

(Doc. # 34-3 at 11). Article 2 of the CBA begins by stating that it "is to be administered in strict compliance with the Grievance Article, Article 18, including all definitions, limitations, and procedures provided for therein." (Id. at 10). It also provides that the parties "may advance the grievance to arbitration" only "[i]f the grievance is not satisfactorily resolved on the basis of the Step 3 grievance response." (Id.). Thus, the agreement to arbitrate includes the question of whether the Union adequately followed the procedures to submit a grievance outlined in Article 18 such that it could pursue arbitration.

And, the Court agrees with the Union that Washington Hospital Center v. Service Employees International Union, Local 722, AFL-CIO, 746 F.2d 1503 (D.C. Cir. 1984), is instructive. (Doc. # 34 at 20-21). There, a hospital refused to arbitrate a Union's grievances, contending that the hospital did not correctly follow the procedural steps outlined in their CBA. Washington Hospital, 746 F.2d at 1505-

12

07 ("Both the Porter and Felder grievances reached Step 3 in late October 1982. However, the Union failed to give the contractually [] mandated notice to the Hospital's Personnel Director within twenty days of the conclusion of that step."). The D.C. Circuit determined that these sorts of procedural disputes should be left to the arbitrator. Id. at 1507-08 ("There are no questions of material fact here; the Union simply failed to comply with procedural requirements. It is well-settled that the effect of such failures is for an arbitrator to decide."). Although St. Petersburg General attempts to distinguish Washington Hospital by arguing that this case does not deal with a procedural requirement, the Court disagrees. (Doc. # 36 at 9-11). The reason why St. Petersburg General refuses to arbitrate is because the Union allegedly did not adequately comport with Article 18, Section 3 of the CBA, titled "Grievance Procedure." (Doc. # 1-1 at 26-27); see also (Doc. # 34-10 at 2 (noting St. Petersburg General's view that the Union failed to comply with Article 18, Section 3.C. of the CBA)).

Thus, the Motion is granted to the extent it seeks an order compelling arbitration and an order directing St. Petersburg Hospital to select an arbitrator with the Union as outlined in the CBA. (Doc. # 34 at 23; Doc. # 1 at 7). The

13

case is therefore stayed pending the arbitrator's resolution of this matter. See Milestone v. Citrus Specialty Grp., Inc., No. 8:19-cv-2341-WFJ-JSS, 2019 WL 5887179, at *3 (M.D. Fla. Nov. 12, 2019) (staying a case pending arbitration). Because the Court has granted the Union's Motion, it declines to grant its request for oral argument. (Doc. # 34-29). To the extent the Union requests an award of attorney's fees, it must file a separate motion establishing the basis for such relief.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1)   Plaintiff   National   Nurses   Organizing   Committee   –   Florida/National   Nurses   United,   AFL-CIO's   ("the   Union's")   Motion   for   Summary   Judgment   to   Compel   Arbitration (Doc. # 34) is **GRANTED** in substantive part.

(2)   The case is hereby referred to arbitration and **STAYED** pending resolution thereof. The Clerk is directed to **STAY** and administratively **CLOSE** the case.

(3)   Defendant Galencare, Inc. d/b/a St. Petersburg General Hospital   and   the   Union   are   **DIRECTED**   to   select   an arbitrator   as   outlined   in   Article   2   of   the   Collective Bargaining Agreement (Doc. # 1-1 at 10) by **August 31, 2021.**

(4)   The parties are **DIRECTED** to file a joint report on the

14

status of the arbitration proceeding by **November 8, 2021,** and every ninety days thereafter. The parties must immediately notify the Court upon the arbitrator's resolution of this matter.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>9th</u> day of August, 2021.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE